**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Orestes Ybarra,                                )
                                               )
                    Petitioner,                )
                                               )     No. CIV 25-006-TUC-CKJ
v.                                             )
                                               )
Ryan Thornell, *et al.*,                       )     **ORDER**
                                               )
                    Respondents.               )
_____)

On May 2, 2025, Magistrate Judge Michael A. Ambri issued a Report and Recommendation ("R & R") (Doc. 11) in which he recommended the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) filed by Orestes Ybarra ("Ybarra") be denied.  Ybarra has filed Objections to the Magistrate's R & R ("Objections") (Doc. 12) and Respondents have filed a Response (Doc. 13).

I. *Report and Recommendation*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).  Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."  The statute does not "require [] some lesser review by [this Court] when no objections are filed."  *Thomas v. Arn*, 474 U.S. 140, 149-50, (1985).  Rather, this Court is not required to conduct "any review at all . . . of any issue that

is not the subject of an objection." *Id*. at 149.

Moreover, under Fed.R.Civ.P. 72(b), a district court may adopt those parts of a magistrate judge's report to which no *specific objection* is made, provided they are not clearly erroneous. *Thomas v. Arn*, 474 U.S. 140, 151-153 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1119 (9th Cir. 2003). No specific objections have been made to the Summary of the Case and the Standard of Review sections of the R & R, the Court adopts these portions of the R & R.

## II. *Objections – Ineffective Assistance of Counsel*

Ybarra objects to the distinction made by the magistrate judge between the deficient, prejudicial advice regarding testifying during the second trial and interfering with Ybarra's right to testify during the second trial, resulting in the erroneous recommendation that Ybarra's claim regarding the ineffective assistance of counsel is procedurally defaulted. Ybarra asserts procedural default applies only when "an argument is *raised* for the first time in 2254 litigation, but not where an argument is *emphasized* for the first time." Objection (Doc. 12, p. 2), *emphasis in original*. Further, on the merits, Ybarra disputes the magistrate judge's determination the Ariz.R.Crim.P. 32 post-conviction court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), was not contrary to or an unreasonable application of Supreme Court precedent or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### A. *Procedural Default of Ineffective Assistance of Counsel Claim*

Ybarra objects to the Magistrate Judge's recommendation determining Ybarra's ineffective assistance of counsel claim is procedurally defaulted. Ybarra asserts he argued in his Ariz.R.Crim.P. 32 Petition for Post-Conviction Relief that counsel repeatedly told Ybarra it was a bad idea to testify at his second trial, did not prepare him to testify during his

- 2 -

second trial,[1] and used Ybarra's uncle, a retired public defender, to also pressure Ybarra from testifying.  Further, Ybarra asserts his Rule 32 counsel argued "that keeping Ybarra from testifying in his second trial was a poor strategy since Ybarra testified in his first trial which ended with no convictions."  Objection (Doc. 12, ECF p. 3).

In seeking review of the denial of the Rule 32 Petition by the Arizona appellate court, Ybarra's brief pointed out his trial attorneys reasoned with him that "defendants don't usually testify as well on retrial, partly because they face cross-examination on statements from the first trial." *Id.*, *citation omitted*.  The brief also stated a defense attorney's duty is not only to inform and advise defendants regarding the right to testify, but to also not interfere with the right.

Ybarra asserts in the pending habeas petition that counsel provided deficient, prejudicial advice to Ybarra by instructing him not to testify in his second trial.  He argues the ineffective assistance of counsel claim presented in the Rule 32 petition raised this claim.  In other words, Ybarra asserts he fairly presented this claim to the state courts, this claim is exhausted, and this claim is not procedurally defaulted.

The magistrate judge stated:

In his Rule 32 proceedings, Ybarra claimed that his counsel interfered with his right to testify. In the pending petition, Ybarra claims that counsel's advice not to testify was deficient performance.  These are different claims. *See Davis v. Silva*, 511 F.3d 1005, 1008–09 (9th Cir. 2008) (A claim consists of "both the operative facts and the federal legal theory.); *Weber v. Ryan*, 2017 WL 10296856, at *6 (D. Ariz. Mar. 9, 2017) ("[W]hile new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not fundamentally alter the legal claim already considered by the

[1]Ybarra's 2254 petition included that one of Ybarra's attorneys for the second trial stated "they prepared him to testify again." Petition (Doc. 1-2, p. 40). On review of the Rule 32 petition, the Arizona appellate court stated, "Both trial counsel testified at the evidentiary hearing that despite their opinions that Ybarra should not testify at his second trial, they nevertheless had prepared him to do so, including by performing mock direct and cross-examinations.  They also submitted an affidavit stating they had repeatedly advised Ybarra of his right and had prepared him to testify in his second trial." *Arizona v. Ybarra*, 2 CA-CR 2023-0192-PR (Ariz.App. 2024) (Doc. 1-9, ECF p. 4); *see also* Superior Court Post-Conviction Ruling (March 31, 2023) (Doc. 1-7, ECF pp. 13-14).

- 3 -

state courts.") (punctuation modified), report and recommendation adopted, 2018 WL 4620546 (D. Ariz. Sept. 26, 2018).

Ybarra maintains that in his Rule 32 petition, he did discuss why "keeping Ybarra off the witness stand in the second trial was poor strategy since Ybarra testified in his first trial which ended in no convictions." Reply Brief, Doc. 8, p. 5. He cites to page 16 in his Rule 32 petition. Doc. 8, p. 5. The court, however, does not agree with Ybarra's reading. The Rule 32 petition "touched upon" the wisdom of counsel's advice, but that advice was not presented as part of his claim. Doc.8, p. 6. On page 16 of the Rule 32 petition, Ybarra explained that counsel "believed it was a bad idea to testify" and pressured him into not doing so by "employing [his uncle] Leto to act as their agent in piling on pressure to keep Ybarra off the witness stand." Doc. 1-6, p. 16. The gravamen of his Rule 32 claim was that he was denied his right to testify, not that defense counsel's advice to stay silent was poor trial strategy. *Id*.

In fact, later in his Rule 32 petition, Ybarra stated that, "[w]hile there was certainly nothing wrong with defense counsel's action in informing Ybarra of their opinion that testifying was not in his best interest, they went too far by repeatedly urging him not to testify and by enlisting Ybarra's trusted family member . . . to convince him to succumb to that recommendation." Doc. 1-6, p. 18 (emphasis added). In the pending habeas petition, Ybarra states the opposite, arguing that defense counsel was indeed wrong to inform Ybarra of their opinion that testifying was not in his best interest because testifying was absolutely in his best interest, and counsel's opinion otherwise was deficient performance.

R & R (Doc. 11, pp. 8-9).

Ybarra asserts he is emphasizing an argument in the pending habeas petition he raised in his Rule 32 petition. Ybarra did present facts in support of a claim regarding whether counsel provided deficient advice. For example, expert witness Steven Weiss testified during the Rule 32 evidentiary hearing regarding the standard of care and "opined that Ybarra's attorneys performed deficiently in the second trial by misadvising Ybarra about testifying. Weiss concluded that trial counsel were ineffective in failing to call Ybarra as a witness at the second trial." Petition (Doc. 1-2, p. 42-44); *see also* Rule 32 Evid. Hrg. Transcript (Doc. 7, ECF pp. 483-525). Specifically, the expert witness testified:

My opinion was that the attorneys fell below the standard of care in -- and were ineffective in the sense that they did not call him to testify in the second trial. That's the nuts and bolts.

Weiss Testimony (Doc. 7, ECF p. 493). However, the expert also testified:

THE COURT: You are not opining, as I understand it, whether it fell below an objective reasonable standard for the attorneys to believe that it was not a good idea for him to testify, right?

- 4 -

THE WITNESS: No, no, I mean -- no.

THE COURT: Whatever their advice was, their view of it, it's within professional norms for them to have said, based on what you know at least, you shouldn't testify?

THE WITNESS: Oh, yeah, absolutely.

* * * * *

THE COURT: . . . So, the lack of having -- without knowing those things that you don't know, the best opinion you can have is that information should have been provided so that the record could be clear and that the best advice can be given and the court can take the appropriate steps?

THE WITNESS: Yes.

*Id*. at 523-25; *see also id*. at 517-18.

Additionally, during argument at the Rule 32 evidentiary hearing, the post-conviction court asked if Ybarra's claim was whether the advice given to him by trial counsel fell below the standard of care or whether the pressure from trial counsel (including the assistance of Ybarra's uncle) and failure to ensure a better record resulted in Ybarra not realizing he had the right to disregard counsel's advice. *Id*. at 649-50. Post-conviction counsel stated it was a combination of things, including a diminished level of preparation for the second trial and deficient advice by not explaining to him why trial counsel did not believe Ybarra should not testify at the second trial. *Id*. at 651-52. Post-conviction counsel clarified, "I am not saying that the fact that they had an opinion, . . . but how they give it to him has to be done in an effective way, and it wasn't." *Id*. at 652-53.

In ruling on Ybarra's Rule 32 petition, the post-conviction court summarized the expert's opinion as follows:

It should be noted that Mr. Weiss did not take issue with Ms. Kostick and Ms. Verenna's advice to Mr. Ybarra that he should not testify. Instead, he opines that because he believes that Mr. Ybarra desired to testify notwithstanding this advice, that he should have been called as a witness.

Rule 32 Under Advisement Ruling (Doc. 1-7, ECF p. 20, n. 7). Further, in the background portion of the decision, the post-conviction court stated the claim as trial counsel "interfered with his constitutional right to testify at the second trial, and that such interference amounted

to ineffective assistance of counsel." *Id*. at ECF p. 10. Significantly, the record does not show Ybarra sought reconsideration by the post-conviction court by asserting the court had misapprehended the claim. Nor did he argue in his petition for review to the appellate court that the post-conviction court had failed to rule on a claim Ybarra raised. In fact, Ybarra again stated in his petition for review that "there was certainly nothing wrong with Trial Counsel's actions in informing Ybarra of their professional opinion that his testifying was not in his best interest[.]" Petition for Review (Doc. 1-8, ECF p. 54); *see also* Petition for Review Reply (Doc. 7, ECF p. 863) ("It is not the advice itself that Ybarra complains of . . . ").

"The mere submission of [] relevant [facts] to a state court is not sufficient to place that court on notice of all potential constitutional challenges stemming from [those facts]." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013), *citation omitted*. As stated by another court:

> Additionally, in the context of IAC claims, each unrelated allegation of counsel's ineffectiveness is generally considered a separate claim for purposes of exhaustion. *Id*., 738 F.3d at 992 (citing *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)). Thus, [petitioner's] presentation of [a witness's] report to the Arizona Supreme Court in the context of unrelated IAC claims does not render this claim exhausted. *See id*.

*Morris v. Thornell*, No. CV-17-00926-PHX-DGC, 2025 WL 3514322, at *94 (D. Ariz. Dec. 8, 2025). While "a petitioner can introduce additional facts to support a claim on federal habeas review so long as he presented the 'substance' of the claim to the state courts." *Gimenez v. Ochoa*, 821 F.3d 1136, 1141 (9th Cir. 2016), *citation omitted*, Ybarra specifically renounced the claim he is now seeking to assert. This is not merely emphasizing a claim or presenting additional facts, but an attempt to expand his claim. *See Francois v. Thornell*, No. CV-24-3231-PHX-SPL (JFM), 2026 WL 1684577, at *10 (D. Ariz. Mar. 26, 2026) ("Expanded claims not presented in the highest state court are not considered in a federal habeas petition."), *citations omitted*, *report and recommendation adopted sub nom. Francois v. Arizona*, No. CV 24-3231-PHX- SPL, 2026 WL 1682183 (D. Ariz. June 10, 2026), Ybarra's claim in the pending habeas petition that counsel provided deficient and prejudicial

- 6 -

advice "fundamentally alter[s] the legal claim already considered by the state courts[.]" *Detrich v. Thornell*, 178 F.4th 1183, 1211 (9th Cir. 2026). The "basic thrust or gravamen" of Ybarra's current claim is not the same as his Rule 32 claim. *Gimenez*, 821 F.3d at 1141, *citations omitted*. Further, a determination that Ybarra had fairly presented this claim to the state court would be in contravention of "Congress' intent to channel prisoners' claims first to the state courts." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), *quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The Court agrees with the magistrate judge this claim is procedurally defaulted. However, as the magistrate judge concluded, this Court also concludes it is appropriate to alternatively consider the claim on the merits.

B. *Merits of Ineffective Assistance of Counsel Claim*.

Ybarra asserts trial counsel were ineffective when they misadvised him about remaining silent in his second trial. Ybarra asserts that, because the sole source of evidence for his defense was Ybarra, counsel should have known the defense could not work without his testimony and, therefore, the Arizona courts' deference to counsel's strategic decision was unreasonable and contrary to clearly established federal law.

The magistrate judge assumed, without deciding, that the advice of trial counsel was poor. The Court declines to decide this issue as a ruling on the *Strickland* prejudice prong "defeats the ineffectiveness claim[,]" *Strickland*, 466 U.S. at 700; *Bible v. Ryan*, 571 F.3d 860, 870 (9th Cir. 2009), and the Court finds herein Ybarra has not shown that the state courts' resolution of the prejudice issue was contrary to federal law or based on an unreasonable determination of the facts.

The magistrate judge summarized the post-conviction court's findings rejecting Ybarra's assertion that, because he was not convicted in the first trial where he testified, "his testimony in a second trial would have led to a similar, if not better result[,]" R & R (Doc. 11, p. 10), *citation omitted*, including (1) no way of knowing if the not guilty verdicts were

- 7 -

the result of Ybarra's testimony, (2) not clear Ybarra would have testified as clearly and concisely in the second trial, and (3) the prosecutions' presentation of the case in the second trial was stronger.  As stated by the magistrate judge:

> For all these reasons, the trial court concluded that Ybarra failed to prove that had he testified in the second trial "the result in that proceeding would have been any different." [Rule 32 Under Advisement Ruling (Doc. 1-7, p. 26)].  And therefore, counsel was not constitutionally ineffective.  Ybarra has not shown that prior adjudication of this issue "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

R & R (Doc. 11, p. 11).

Further, the magistrate judge also discussed the standard of care expert.  The magistrate judge acknowledged that Ybarra's testimony in the first trial may have played a significant role, but pointed out:

> It is also possible, as the trial court found, that the jurors had a reasonable doubt because they found the government's case less than persuasive.  The real issue, however, was what role would Ybarra's testimony play at the second trial.  Weiss's opinion fails to account for Ybarra's heightened emotional state at his second trial and the government's improved presentation.  Both of these factors would have reduced the likelihood that Ybarra's testimony at the second trial would have been as well received and persuasive as it had been at the first trial.  *See also*, Doc. 1-2, pp. 46-47 (Weiss testified that trial counsel's advice not to testify was within professional norms but there was little in the record indicating that they clearly explained their reasoning to Ybarra.).

R & R (Doc. 11, p. 11).  The magistrate judge also disagreed with Ybarra's assertion he was the only source of evidence to support his defense.  Rather, trial counsel was able to attack the victim's testimony by highlighting the lack of corroborating physical DNA evidence (e.g., lack of the victim's DNA on Ybarra's penile swab, theory of Ybarra's skin cells on the victim's buttock migrating with sweat to the anal area during the 30 minute wait for the police in a non-air conditioned vehicle in 115 degree weather), highlighting Ybarra's prior testimony (including a denial), and explaining to the jury how the victim's testimony support the defense (e.g., victim's soreness because of multiple volleyball practices).

The magistrate judge summarized:

> Ybarra has not shown that his live testimony at his second trial was indispensable to

- 8 -

> his defense.  He has not shown that "the results of the proceeding would have been different" had he testified at the second trial.  Or to be more precise, he has not shown that the trial court's resolution of this issue was habeas error.

R & R (Doc. 11, p. 13).  The Court agrees with the magistrate judge.  Further, this Court does not find that the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Scott v. Broomfield*, 173 F.4th 1131, 1145 (9th Cir. 2026), *quoting* 28 U.S.C. § 2254(d)(1)–(2).  The Court finds that Ybarra has failed to show he is entitled to habeas relief on this claim.

III.  *Objection – <u>Batson Challenge</u>*

A. *Preliminary Arguments*

Ybarra objects to the magistrate judge's deference to the state court determination that an incorrect application of *Batson v. Kentucky*, 476 U.S. 79 (1986), to a peremptory strike of a potential juror did not warrant a new trial in contravention of  his Sixth Amendment right to a fair trial.  Ybarra asserts the state court determination is not entitled to deference because the "Arizona Court of Appeals failed to address the propriety of [the prosecutor's ] excuse other than to note it was given . . . It becomes the federal district court's job to perform the proper constitutional analysis."  Objection (Doc. 12, ECF p. 9).

However, the Court disagrees with Ybarra's characterization of the appellate court's ruling.  The appellate court recognized the trial court had incorrectly stated the *prima facie* first step of *Batson*, found the *prima facie* first step had been complied with, and recognized the prosecutor stated reasons for peremptory challenges, as required by *Batson*'s second step.  The appellate court then quoted the trial court as to the third step:

> . . . even if it was a prima facie showing, the fact of the matter is [the state] has offered not one but three separate race [neutral] reasons, and the Court's recollection of [A.P.'s] answer on the first was she was enthusiastic at her belief that the shows could be real, much more so than the other jurors.

While she did admit that there are things that were entertainment value and things that were real, she—that was a legitimate understanding of how [the state] understood her answers to the Court's questions.

It is race neutral, and there is no question about that as are the other two reasons. Therefore, even if it were a prima facie showing, [the state] having given sufficient race neutral reasons for her strike, the Batson challenge is respectfully denied.

*State v. Ybarra*, 2019 WL 2233299 *5 (Ariz.App. 2019) (Doc. 1-5, ECF p.5).  The appellate court stated:

Although the trial court did not expressly state whether Ybarra proved purposeful discrimination, it did say the state's race-neutral explanations were "sufficient." Indeed, one of the three race-neutral explanations was based on A.P.'s answers to questions asked by the court itself; thus, the court had the opportunity to consider A.P.'s demeanor and credibility, as well as that of the prosecutor.  Although the court did not make specific factual findings about the intent, demeanor, or credibility of A.P. or the prosecutor, the record supports the court's implicit finding that the state was not purposefully discriminating against A.P. when it exercised one of its peremptory strikes. See Snyder, . . Thus, we find no error, much less the clear error required to disturb the court's ruling.

*Ybarra*, 2019 WL 2233299 *6 (Doc. 1-5, ECF p.7), *citations omitted*.  In quoting the trial court, the appellate court recognized the prosecutor had offered three reasons for her peremptory strike, that it appeared A.P.'s reaction regarding the crime shows was more pronounced than other potential jurors, and the prosecutor's understanding of A.P.'s reaction was legitimate.  The appellate court also discussed the trial court's opportunity to consider the demeanor and credibility of A.P. and the prosecutor and determined the trial court's implicit finding the state was not purposefully discriminating against A.P. was not error.  In other words, the appellate court addressed the propriety of the prosecutor's stated reasons.

Additionally, Ybarra argues the magistrate judge "agreed that at least one of the state's justifications for striking A.P. was not race-neutral."  Objection (Doc. 12, ECF p. 8), *citing* R & R (Doc. 11, p. 18).  The magistrate judge stated:

Ybarra argues that the prosecutor's statement that she struck A.P. because "A.P. said she had an uncle who had been convicted of molestation" is not supported by the record and does not provide a reasonable justification for her decision to strike A.P. from the jury.

R & R (Doc. 11, p. 18).  The magistrate judge determined the prosecutor's failure to challenge other potential jurors who had relatives with similar cases cast doubt on the

prosecutor's stated partial reason for striking A.P., whose uncle had been involved in a similar case.  The magistrate judge did not state he agreed one of the state's justifications for striking A.P. was not race neutral.  Rather, the magistrate judge stated, "The court finds that the record refutes the prosecutor' assertion that she struck A.P. because "she had an uncle who had been convicted of molestation." *Id*. at 19, *citation omitted*.  This Court agrees with the statement of the magistrate judge.  However, the Court recognizes this may be a pretextual reason for striking A.P.

B.  *Reality of Television Shows and Body Language*

As to the other stated reasons for the striking of A.P. the magistrate judge stated:

The prosecutor explained first that she struck A.P. because "when the court asked about legal and crime TV shows, A.P. said she thought some of the shows were accurate."  *State v. Ybarra*, 2019 WL 2233299, at *6[.]  Ybarra concedes that when A.P. was first asked if these shows were real, she said, "Absolutely."  Doc. 1-2, p. 96. Later, however, A.P. walked back that statement and said that "It depends" when the judge asked whether those shows are "more entertainment" or "more accurate."  *Ybarra* at *4.  Ybarra argues that in light of A.P.'s  more considered answers, no one, including the prosecutor, would believe her initial responses and conclude that she would have trouble properly interpreting the evidence presented at trial.  This court disagrees.

The trial court observed that "A.P.'s answer [to the question] was she was enthusiastic at her belief that the shows could be real, much more so than the other jurors."  *Id*. at *5.  The court stated,  "While she did admit that there are things that were entertainment value and things that were real, she—that was a legitimate understanding of how the state understood her answers to the Court's questions.  *Id*. (punctuation modified).

Even though A.P. later appeared to recognize that there was a difference between entertainment and reality, one could conclude that her "enthusiastic" response to the judge's question indicated that she was more likely than other jurors to misunderstand the evidence presented at trial.  And the trial court opined that it was reasonable for the prosecutor to interpret her response in that way.  This court finds that the proffered reason for the strike is supported by the record.

The prosecutor also stated that she struck A.P. because her "body language indicated that she didn't seem to understand some of the things that they were asking of her." *State v. Ybarra*, 2019 WL 2233299, at *6 [].  Ybarra asserts that this "explanation is not only pure fabrication and projection, it is seemingly racist."  Doc. 1-2, p. 97. He argues that the state's reasoning is "rife with discriminatory intent making its racism 'inherent' and thus making its justification for the strike 'facially invalid.'"  *Id*.  The court does not agree.

- 11 -

While it is possible that a strike based on a venirperson's demeanor could be a pretext for a discriminatory motive, it is not so "implausible or fantastic" that the court should assume that it is. *Garza v. Kernan*, 2009 WL 2777159, at \*8 (E.D. Cal. Aug. 27, 2009) ("[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."), *subsequently aff'd*, 415 F. App'x 814 (9th Cir. 2011); *but see United States v. Thompson*, 827 F.2d 1254, 1260 (9th Cir. 1987) ("Excluding jurors because of their profession, or because they acquitted in a prior case, or because of a poor attitude in answer to voir dire questions is wholly within the prosecutor's prerogative. Such reasons may not be logical, but that's what peremptory challenges are all about."). Apart from Ybarra's suspicions, there is little in the record to support or disprove the prosecutor's assertion about A.P.'s demeanor. The court finds that the record neither supports nor refutes this proffered reason for the strike.

R & R (Doc. 11, p. 17-18). Ybarra cites *Reynoso v. Hall*, 395 Fed.Appx. 344 at \*4 (9th Cir. 2010), arguing the record does not support a peremptory strike on this basis. In other words, the magistrate judge erred in deferring to the state court ruling on this issue. However, unlike in *Reynoso*, Ybarra's trial attorneys did not dispute the prosecutor's observation regarding A.P.'s demeanor. Moreover, the Court finds significant the prosecutor made clear the body language, as well as the relative's conduct, of A.P. were secondary to the primary reason. Indeed, the trial court acknowledged the reasonableness of the primary reason by referring to A.P.'s enthusiasm in her belief that the shows could be real, compared to other potential jurors.

This presents the opposite circumstances from *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008), where the peremptory strike was motivated in substantial part by discriminatory intent and "the record [did] not show that the prosecution would have pre-emptively challenged [the juror] based on [a non-discriminatory reason] alone." The conduct of A.P.'s relative and A.P.'s body language were secondary to the primary reason for the peremptory strike – A.P.'s enthusiasm in her belief in the reality of television crime shows. Further, the trial court was "in the best position to observe the demeanor [and] body language" of a potential juror *Boyd v. Maricopa Cnty. Superior Ct.*, No. CV2202012PHXROSDMF, 2023 WL 6964050, at \*5 (D. Ariz. Sept. 14, 2023), *report and recommendation adopted*, No. CV-22-02012-PHX-ROS, 2023 WL 6961897 (D. Ariz. Oct. 20, 2023). This includes A.P.'s enthusiasm as to the reality of television crime shows.

- 12 -

Further, the magistrate judge recognized the deference afforded to the state courts on this issue:

> This court does not decide the *Batson* issue de novo. Instead, this court limits its review to the state courts' prior adjudication of the issue. *See, e.g., Garza v. Kernan*, 2009 WL 2777159, at *9–10 (E.D. Cal. Aug. 27, 2009) ("While the undersigned might have reached a different conclusion here, that is not the issue.  This court may not substitute its evaluation of the record for that of the state court."), *subsequently aff'd*, 415 F. App'x 814 (9th Cir. 2011).

R & R (Doc. 11, p. 29).  The magistrate judge quoted the state appellate court, which stated that, while the trial court did not expressly state whether Ybarra had established purposeful discrimination, the trial court did say the state's race-neutral explanations were "sufficient." *Id.*, *quoting Ybarra*, 2019 WL 2233299, at *6.  Further, "one of the three race-neutral explanations was based on A.P.'s answers to questions asked by the court itself; thus, the court had the opportunity to consider A.P.'s demeanor and credibility, as well as that of the prosecutor."  *Id.*  Again, as recognized by the magistrate judge, the appellate court determined the record supported the trial court's implicit finding that "the state was not purposefully discriminating against A.P. when it exercised one of its peremptory strikes[.]" *Id.*

The magistrate judge further stated:

> "Because [this] prior decision[] rest[s] largely on credibility, a reviewing court ordinarily should give those findings great deference." *Williams v. Rhoades*, 354 F.3d 1101, 1109 (9th Cir. 2004).  "For [this court] to set aside the state courts' findings on discriminatory intent, [the defendant] must rebut the presumption of correctness by clear and convincing evidence." *Id.*

R & R (Doc. 11, p. 20).

Ybarra's argument that the state disparately treated A.P. compared to non-Black jurors fails to recognize A.P. was not "similarly situated" as to the non-Black jurors.  Rather, the prosecutor's primary reason for the peremptory strike was non-discriminatory.  Indeed, when asked whether she had a race neutral reason for striking A.P., the prosecutor stated:

> [Prosecutor:] . . . So A.P. gave a couple of answers that were very concerning to the State.
>
> The first, I think, was when the Court inquired about the kind of TV shows, CSI, et

cetera, and whether or not they were real or not, and she said she thought some of them were real.

That alone in this particular case causes the State great concern if she believes that anything that she sees on TV is something that she could perhaps see in the courtroom, so *that's primarily the reason that the State struck her*.

I think the other thing, Judge, just in terms of her body language, she didn't seem to understand some of the things that we were asking her on occasion, so that was something else that caused me some concern.

I want to say she also stated that she had an uncle who had been convicted of something relating to molestation charges. She did say she was very young when that happened. She didn't have a lot of recollection about it, but *all those things together, primarily the first reason, caused the State concerns, so that's why [A.P.] was struck*.

Second Trial, Day One Transcript (Doc. 8-2, ECF pp. 146-47), *emphasis added*.

The appellate court's conclusion the trial court did not err in denying the *Batson* challenge implicitly determined the prosecutor was not "motivated in substantial part by discriminatory intent." *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010), *quoting Snyder v. Louisiana*, 552 U.S. 472, 485 (2008); *see also Gill v. Mecusker*, 633 F.3d 1272, 1290 (11th Cir. 2011) ("focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"); *Greene v. Upton*, 644 F.3d 1145, 1155-56 (11th Cir. 2011) ("*Batson* does not require elaborate factual findings" and applying AEDPA deference to a state court's *Batson* ruling even though it did not address every argument or make an explicit fact finding on *Batson*'s third step). The appellate court, and "the trial court[,] could reasonably determine that there was no *Batson* violation because "[t]he prosecutor provided a number of other permissible and plausible race-neutral reasons." *Sifuentes v. Brazelton*, 825 F.3d 506, 530 (9th Cir. 2016), *quoting Rice v. Collins*, 546 U.S. 333, 340-41 (2006). The Court agrees with the magistrate judge's conclusion:

Ybarra has not shown that prior adjudication of this issue "resulted in a decision that was contrary to or an unreasonable application of Supreme Court precedent" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

R & R (Doc. 11, p. 20). Ybarra is not entitled to habeas relief on his *Batson* claim.

- 14 -

IV. *Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.; *see also Robbins v. Carey*, 481 F.3d 1143,1146-47 (9th Cir. 2007) (failure to object to magistrate judge's conclusions does not automatically waive appellate challenge) In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would find it debatable whether the Petition stated a valid claim of the denial of a constitutional right pursuant to *Batson* and the Court finds that jurists of reason would find it debatable whether the district court was correct in its procedural default ruling. A COA shall issue as to Ybarra's claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed.

- 15 -

R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1.      The Report and Recommendation (Doc. 11) is ADOPTED;

2.      Ybarra's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is DENIED and DISMISSED WITH PREJUDICE.

3.      The Clerk of the Court shall enter judgment and shall then close its file in this matter, and;

4.      A Certificate of Appealability shall issue in this case.

DATED this 23rd day of July, 2026.

_____
Cindy K. Jorgenson
United States District Judge